## CIRCUIT COURT OF THE CITY OF RICHMOND

Emmett D. Gillispie

v.

Virginia Department of
Environmental Quality

December 16, 2004

Case No. CH04-1786-3

BY JUDGE RANDALL G. JOHNSON

This is an appeal from a decision of the Virginia Department of Employment Dispute Resolution holding that Emmett Gillispie's employee grievance does not qualify for a hearing under the grievance procedure for classified state employees, Va. Code §§ 2.2-3000 *et seq.* At issue is whether a work related e-mail sent to Gillispie and others constitutes discipline that qualifies for a hearing.

Gillispie is an environmental engineer consultant with the Virginia Department of Environmental Quality. According to his written grievance, which was filed on June 3, 2004, and which concerns events that had occurred in April and May of this year, Gillispie complained about a picture that had been placed in a public hallway at work. Although the copy of the picture attached to the grievance is not of good quality, the grievance suggests that the picture is of an Iraqi prisoner of war holding a sign that says: "Will Tyrannize for Food." Gillispie's "complaint" consisted of writing on the picture: "How 'bout taking it down?" It was not taken down. Gillispie then wrote on the picture: "Steve, I'm tired of seeing this," Steve Mahilko being the co-worker Gillispie suspected of placing the picture in the hall. When the picture still was not taken down, Gillispie took it down and put it in a trashcan. The picture later "reappeared" in Gillispie's office, leading Gillispie to confront Mahilko "with a stern warning for him never to throw his trash into my office again." After that, the picture was not placed back in the hall, but Gillispie did see it "posted" in Mahilko's office. Still, according to Gillispie, Mahilko and

Mahilko's supervisor complained to the office director, Robert Weld, that an altercation had occurred between Mahilko and Gillispie. About two weeks later, the picture was removed from Mahilko's office.

After the picture had been removed from Mahilko's office, Gillispie spoke with Weld, the office director, and sent Weld information regarding the matter. Weld also spoke with others about the incident. On May 4, 2004, Weld sent the following e-mail to Gillispie, Mahilko, and others:

> Gentlemen:
>
> I have had the opportunity to meet with all of the involved parties regarding the incidents over the past few weeks surrounding the materials posted in/around Steve's office. Based on the information gathered during these meetings and the fact that all materials have been removed, I have concluded that no further action is necessary at this time regarding these incidents.
>
> In the future, please use careful judgment and be sensitive to the perception of others regarding any information posted in and around your office that may be visible to others in the workplace. Additionally, if you have an issue with another employee and you are uncomfortable or unable to address the issue satisfactorily, please notify your immediate Supervisor and/or the other employee's Supervisor of the situation. If the Supervisors are unavailable to assist, you can notify me of the situation.
>
> You should not take it upon yourself to determine what corrective action is necessary. It is instances like this that can sometimes escalate into workplace violence situations. I am confident that all involved can put this issue behind them and we can all get back to focusing on the job that we are here to do, protection of human health and the environment.
>
> Thank you for your cooperation.
>
> /s/ Robert

It is Gillispie's position that Weld's e-mail is a reprimand that entitles him to a hearing on his complaint. The Department argues that the e-mail is not "formal discipline" and that a hearing is not appropriate.

In the recent case of *Randolph v. City of Richmond*, 66 Va. Cir. 102 (2004), this court was faced with an almost identical issue. In that case,[1] a City of Richmond employee had been given a "written counseling," which the city claimed was not formal discipline and did not entitle Randolph to a hearing under a grievance procedure patterned after the Commonwealth's procedure. In fact, when Randolph had first appealed a non-hearing decision in an earlier case, the court had agreed with the city and ruled that a hearing was not appropriate. In the case decided in October, however, the court reversed its position and held that, since written counselings were used by the city to deprive employees of employment benefits they otherwise might receive, in Randolph's case an "Exceptional" performance rating, such counselings were "disciplinary actions" as that term is used in Va. Code § 15.2-1507, which is part of the statutory scheme requiring local governments to provide grievance procedures for their classified employees. *See* Va. Code § 15.2-1506. The court now holds that the same is true with regard to the e-mail at issue here.

As is true with local government employees, state classified employees are allowed to grieve disciplinary actions. Specifically, Va. Code § 2.2-3004(A) provides, in part:

> A grievance qualifying for a hearing shall involve a complaint or dispute by an employee relating to the following adverse employment actions in which the employee is personally involved, including but not limited to (i) formal disciplinary actions. . . .

As the court pointed out in *Randolph*, no Virginia statute defines discipline. *Webster's* defines it as follows:

> 1: PUNISHMENT 2 *obs*: INSTRUCTION 3: a subject that is taught : a field of study 4: training that corrects, molds, or perfects the mental faculties or moral character 5a: control gained by enforcing obedience or order b: orderly or prescribed conduct or pattern of behavior c: SELF-CONTROL 6: a rule or system of rules governing conduct or activity.

*Webster's Ninth New Collegiate Dictionary* 360 (1983).

According to *Black's Law Dictionary*, discipline is:

---

[1] Although *Randolph* technically consisted of two cases, it was treated there, and will be referred to here, as one case.

1. Punishment intended to correct or instruct; esp., a sanction or penalty imposed after an official finding of misconduct. 2. Control gained by enforcing compliance or order. 3. *Military law.* A state of mind inducing instant obedience to a lawful order, no matter how unpleasant or dangerous such compliance might be.

*Black's Law Dictionary* 476 (7th ed. 1999).

The court believes that the e-mail in this case fits squarely within many of those definitions. Specifically, the e-mail is clearly designed to establish or reaffirm "orderly or prescribed conduct or pattern of behavior," at least as such conduct and behavior relate to the posting and removal of materials in the workplace. It also establishes or reaffirms a "rule or system of rules governing conduct or activity" involving the posting and removal of such materials. Further, it seeks to control such situations in the future "by enforcing compliance or order."

The court is also of the opinion that the e-mail is a form of punishment or sanction. In this regard, the Department's lawyer was unable to satisfactorily explain to the court the disposition of the e-mail in question; that is, is it in Gillispie's personnel file? Is it in a supervisor's file? Is it floating around in cyberspace available for anyone to see whenever Gillispie undergoes a performance evaluation or applies for a promotion? As long as it remains in existence and available to others, it, like the written counseling in *Randolph*, can be used to deprive Gillispie of an employment benefit.

The court's conclusion is further bolstered by the decision denying Gillispie's request for a hearing. After ruling that Gillispie had "failed to make the threshold showing of an adverse employment action," the Director of the Department of Employment Dispute Resolution, which is the agency responsible for administering the Commonwealth's grievance procedure, stated:

> We note, however, that while informal counseling does not have an adverse impact on the grievant's employment, it could be used later to support an adverse employment action against the grievant. . . . Moreover . . . a supervisor may consider informal documentation of perceived performance problems when completing an employee's performance evaluation. Therefore, should the *informal counseling in this case later serve to support an adverse employment action against the grievant*, such as a formal Written Notice or a "Below Contributor" annual performance rating, this ruling does not foreclose the grievant from attempting

to contest the merits of the informal counseling through a subsequent grievance challenging the adverse employment action.

The problem with the director's observation is that, under the Commonwealth's grievance procedure, a written grievance must be filed within thirty days of the event that gives rise to the grievance. The e-mail Gillispie challenges was sent on May 4, 2004. It is already too late to file a new grievance based on it. By the time an adverse employment action or performance evaluation based on the e-mail is performed, there will be no opportunity for Gillispie to challenge the e-mail itself. If the e-mail is to be challenged, it must be challenged in the pending grievance. What the director's comment confirms for the court, however, is that the e-mail can be used to support an adverse employment action and can be considered in conducting a performance evaluation, actions that clearly qualify for a hearing. A hearing will be ordered in this case.

Lastly, the court wants to make clear what it is not deciding in this action. It is not deciding that Gillispie's grievance has merit or that it does not have merit. It is also not deciding that Gillispie or any of Gillispie's co-workers or supervisors acted properly or improperly. The only thing the court is deciding is that Gillispie is entitled to have his grievance heard by a hearing officer. It is up to the hearing officer to decide the merits.